#30652-r-PJD
**2025 S.D. 5**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

GREG DECRAMER and
PATRICIA DECRAMER,                         Petitioners and Appellants,

v.

ROD DORALE and MCCOOK
COUNTY BOARD OF
ADJUSTMENT,                                Respondents and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
MCCOOK COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE CHRIS S. GILES
Judge

* * * *

RONALD A. PARSONS, JR. of
Johnson, Janklow & Abdallah, LLP
Sioux Falls, South Dakota

PAMELA R. REITER
ANTHONY P. SUTTON of
Reiter Law Firm, LLC
Sioux Falls, South Dakota           Attorneys for petitioners and
                                     appellants.

* * * *

CONSIDERED ON BRIEFS
SEPTEMBER 30, 2024
OPINION FILED **02/12/25**

* * * *

MICHAEL E. UNKE
Salem, South Dakota

Attorney for respondent and
appellee Rod Dorale.


MIKE C. FINK
McCook County State's Attorney
Bridgewater, South Dakota

Attorneys for respondent and appellee
McCook County Board of Adjustment.

#30652

DEVANEY, Justice

[¶1.]     The McCook County Board of Adjustment (Board) granted Rod Dorale a variance after he built his house.  Under the applicable county ordinance, structures must be set back a minimum of nine feet from neighboring property lines.  Dorale built his house with a setback of seven feet three inches.  Greg and Patricia DeCramer, who own the property next to Dorale, appealed the Board's decision via a petition to the circuit court for a writ of certiorari.  The circuit court denied the petition.  The DeCramers appeal, arguing that the Board exceeded its authority by violating the governing statute and county ordinance when granting the variance.  We reverse.

### Factual and Procedural Background

[¶2.]     Greg and Patricia DeCramer own lot 22 in the Eagle Ridge Addition of McCook County, a housing subdivision zoned in the Lake Residential District.  Rod Dorale owns the adjacent properties, lots 20 and 21.  As specified in section 5.03 of the 2014 Revised Zoning Regulations for McCook County, the Lake Residential District requires a minimum setback of nine feet for side yards.

[¶3.]     On June 29, 2020, Dorale submitted a building permit application to the McCook County Planning and Zoning Office for the construction of a new house with a three-stall garage on lots 20 and 21.  The building and site plans reflected that the third stall on the garage would be set back ten feet from the property line Dorale shares with the DeCramer property.  Dorale signed off on the provision in the application stating that he "agree[d] to comply with all provisions of the McCook County Zoning regulations, county ordinances and also with building plans and site

-1-

plan submitted." The building permit application was approved and Dorale obtained a survey of his property at some point prior to beginning construction. The construction of his home was completed in November 2020.

[¶4.]     A dispute later arose between Dorale and the DeCramers, which ultimately led to the matter at issue in this appeal. On April 25, 2023, Dorale, president of the Eagle Ridge Addition Homeowner's Association, sent the DeCramers a letter on behalf of the Association, stating that they had violated a provision in the Association's restrictive covenants prohibiting garbage and trash on a homeowner's property. Sometime after they received this letter, the DeCramers had their property surveyed and the survey showed that Dorale's new construction was only set back seven feet three inches from their property line. The DeCramers subsequently filed a civil lawsuit against Dorale, alleging negligence and nuisance, based on the fact that Dorale had built his home in violation of McCook County's setback requirement. The complaint included requests for damages and injunctive relief.

[¶5.]     Shortly before the DeCramers filed their lawsuit, Dorale submitted an application to the Board seeking a variance for a seven-foot three-inch setback for his already-built home. On his application, Dorale provided the following explanation of the special conditions and circumstances as requested on the form: "Covenants of Eagle Ridge Addition called out for minimum 5' set back. House was set [at] 7'-3"."

[¶6.]     On July 11, 2023, the Board held a public hearing on Dorale's variance request at which the County Zoning Administrator presented the information

provided in Dorale's application to the Board. According to the Board's minutes, Dorale's attorney suggested that the Eagle Ridge Addition Covenants "supersede County zoning regulations" and noted that the setback requirement in these covenants is five feet. His attorney also claimed, in his remarks, that the County's nine-foot setback "is a guideline," and he advised the Board that "Dorale did read the setback info, old covenants were 9', same as zoning regulations."[1] In response, the DeCramers' attorney asked the Board to enforce its own nine-foot setback regulation. He also informed the Board that there was a pending nuisance action pertaining to this matter and urged the Board to "let [the] civil lawsuit process proceed with making a determination."

[¶7.]    The Board, with one member abstaining, voted unanimously to grant Dorale a variance. The DeCramers then appealed the Board's decision by sending a letter to the Zoning Administrator, dated July 25, 2023.[2] According to the DeCramers, after this appeal was filed, the McCook County State's Attorney notified the parties' counsel, the Auditor, and the Zoning Administrator, that the process employed by the Board did not follow the requirements for granting a

---

1.    The information quoted is from the Board minutes and does not necessarily reflect what Dorale's attorney, or any of the others at the hearing, said verbatim.

2.    This letter follows the appeal procedure in section 16.04 of the McCook County zoning regulations, which states: "A notice of appeal shall be filed with the Zoning Administrator, who shall transmit to the Board of Adjustment all information and records concerning the appeal within ten business days." This provision allows for a public hearing at which the appellant seeking reconsideration of the Board's initial decision appears before the Board. It further requires the Board to enter "[w]ritten findings certifying compliance with the specific rules governing the action[.]"

variance set forth in section 16.03 of the County's zoning regulations (the Ordinance) and, therefore, another hearing was required.

[¶8.]      On August 21, 2023, the Zoning Administrator reviewed Dorale's application and completed a written recommendation form that lists the factors identified in section 16.03 (A) through (F) that must be addressed by an individual requesting a variance.[3]  However, the only factor on which the Zoning Administrator commented was subsection 16.03 (B), which refers to whether "[l]iteral interpretation of the provisions of this ordinance would deprive the applicant of rights commonly enjoyed by other properties in the same district under the terms of this ordinance[.]"  The administrator's comment as to this provision states, "recommendation to approve[.]  Covenants on this property allow for 5' setback[.]"

[¶9.]      On August 22, 2023, the Board held a public hearing on the appeal. Counsel for both parties appeared at this hearing and presented similar arguments for and against the variance.  There was some discussion amongst the Board members regarding the Association's covenants not complying with the County's zoning regulations.  It does not appear, from the minutes, that the State's Attorney was present or offered any input to the Board.  After a motion to follow the recommendation by the Zoning Administrator, the Board once again approved the variance, without making any written findings.

---

3.    The factors in subsection 16.03 (A) through (F) of the Ordinance are very similar to the factors identified in section 16.03 (G)(2)(a) to (g), a subsection which requires the Board to make written findings certifying that such provisions have been met when granting a request for a variance.

[¶10.]    On September 21, 2023, the DeCramers appealed the Board's decision to the circuit court via a petition for a writ of certiorari pursuant to SDCL 11-2-61. On October 16, 2023, prior to any return being filed, the parties entered into a stipulation acknowledging that the Board had failed to submit written findings as required by the County's zoning regulations and agreeing that the circuit court could hold the DeCramers' petition for a writ of certiorari in abeyance until the Board entered such findings.

[¶11.]    The Board then held a third hearing to consider Dorale's variance application on November 28, 2023.  Both the DeCramers and Dorale submitted proposed written findings to the Board, and the Zoning Administrator read her recommendations to the Board at the hearing.  The State's Attorney appeared at this hearing and advised the Board to "review points of discussion and provide written findings" regarding the variance application.  At the conclusion of the hearing, the Board entered the following findings pursuant to subsection 16.03 (G)(2)(a)-(g), which requires the Board to make written findings certifying that the provisions identified in the Ordinance have been met:

| Provision as stated in Zoning Ordinance | Findings of the Board of Adjustment |
|---|---|
| a. Extraordinary conditions or circumstances exist which are peculiar to the use or structure involved and are not applicable to other uses or structures in the same district | nothing extraordinary in this residential district |
| b. Literal interpretation of these regulations would deprive the applicant of rights commonly enjoyed by other properties in the same district under the terms of these regulations and would create an undue hardship on the use of the land. | undue hardship doesn't exist due to having to move the house; and covenants allow 5' setback |
| c. The special conditions or circumstances are not the result of the applicant's actions. | information presented was unclear as to applicants' action |
| d. The applicant will not receive any special privilege denied to other uses or structures in the district. | prior variance applications have been approved in the county |
| e. The variance is the minimum possible to allow reasonable use of the property or structure. | yes, variance is minimum, at 7'3" |
| f. The general purpose and intent of these regulations will be followed, and the action will not be offensive to adjacent areas or to the public interest. | allowing variance is not offensive |
| g. No nonconforming use or structure in the same district and no permitted or nonconforming use or structure in other districts shall be grounds for a variance. | structure is permitted |

Based on these findings, the Board voted to approve the variance and the DeCramers subsequently filed an amended petition for writ of certiorari with the circuit court. They asserted that the Board "neglected to do an act required by law" by failing to apply the provisions of SDCL 11-2-53(2) and its own Ordinance.

[¶12.]     The circuit court held a hearing on the DeCramers' petition and denied their request for a writ of certiorari in an oral ruling. In its ruling, the circuit court began by concluding that the Ordinance is not ambiguous. The court then noted that variances are usually requested prior to construction, and that "[i]t appears from the facts that Mr. Dorale blatantly disregarded the building permit." The

-6-

court further noted that a survey had been conducted and Dorale "knew what he was doing and he knew how he built it." The court expressed its view that Dorale's claimed reliance on the five-foot setback in the restrictive covenants was "very problematic in that his building permit said 10 feet, plain and clear on the face." The court acknowledged that the County's more restrictive setback would apply, and further noted that although the zoning regulations Dorale relied on required a nine-foot setback, Dorale "went ahead and did what he wanted to do."

[¶13.] However, the circuit court nevertheless determined that the Board complied with the requirements for granting a variance in SDCL 11-2-53(2). Specifically, the court noted that the Board had "determined in its findings that allowing the variance would not be offensive to the public" and "that undue hardship exists because Mr. Dorale would have to move the house[.]" The court then explained its view on the limited nature of a review on a writ of certiorari, stating, "It is not within the [c]ourt's discretion to question the [Board] or to examine the facts leading up to the request for the variance by the defendant." Referring to this Court's precedent, the circuit court further noted that "[t]he Board's decision will be upheld unless it did some act forbidden by law or neglected to do some act required by law[.]" The court then concluded the Board was "acting within its authority in granting the variance" under the Ordinance.

[¶14.] The DeCramers appeal from the circuit court's order denying the writ. They maintain the Board exceeded the scope of its authority by violating SDCL 11-2-53(2) and the Ordinance.

## Standard of Review

[¶15.]     When reviewing a board's decision via a writ of certiorari, we have stated that "[w]e will not disturb the [board's] decision . . . unless it did not have jurisdiction, did not pursue 'in a regular manner the authority conferred upon it[,]' or 'did some act forbidden by law or neglected to do some act required by law.'" *Stockwell v. McCook Cnty. Bd. of Comm'rs*, 2024 S.D. 2, ¶ 15, 2 N.W.3d 236, 240 (quoting *Ehlebracht v. Deuel Cnty. Plan. Comm'n*, 2022 S.D. 18, ¶¶ 12–13, 972 N.W.2d 464, 470) (third alteration in original).  "[C]ertiorari cannot be used to examine evidence for the purpose of determining the correctness of a finding[.]" *Hines v. Bd. of Adjustment of Miller*, 2004 S.D. 13, ¶ 10, 675 N.W.2d 231, 234 (citations omitted).  Whether the Board's decision violates a statutory directive or the Ordinance at issue here "is a legal question we review de novo." *Stockwell*, 2024 S.D. 2, ¶ 15, 2 N.W.3d at 240.

[¶16.]     To the extent a review of whether the Board neglected to do some act required by law involves interpretation of statutes or ordinances, we have noted that "[z]oning ordinances are interpreted according to the rules of statutory construction and any rules of construction included in the ordinances themselves." *Id.* ¶ 21 (quoting *Hoffman v. Van Wyk*, 2017 S.D. 48, ¶ 8, 900 N.W.2d 596, 598). Statutory interpretation begins with an analysis of the statute's text.  *Id.*  If the text "is clear, certain and unambiguous, our only function is to declare the meaning of the ordinance as expressed." *Id.* (quoting *City of Sioux Falls v. Strizheus*, 2022 S.D. 81, ¶ 19, 984 N.W.2d 119, 124).

**Analysis and Decision**

[¶17.]        The DeCramers contend the Board unlawfully granted Dorale a variance because it did not enter the requisite findings required by SDCL 11-2-53(2).  They also claim the Board failed to certify that the overlapping provisions identified under subsection 16.03 (G)(2)(a)-(c) of the Ordinance had been met.  As to these claims, we note, at the outset, that the circuit court seemed to apply an overly narrow interpretation of the parameters of the review of a board's decision on a writ of certiorari.  While the court correctly observed that it could not review whether a board's decision or findings were correct, a court considering the merits of a petition for a writ of certiorari can, and should, review whether a board's specific findings, or a lack thereof, make the grant of a variance unlawful.  *See Dunham v. Lake Cnty. Comm'n*, 2020 S.D. 23, ¶ 20, 943 N.W.2d 330, 335–36 (finding the board exceeded its authority under SDCL 11-2-53(2) and its county ordinance when it failed to "meaningfully address the special conditions required" and "made no determination" that a variance was necessary "because of some 'extraordinary and exceptional' situation on the property[.]").

[¶18.]        A board of adjustment's authority to grant a variance is not without limitations.  In accordance with SDCL 11-2-53(2), a board of adjustment may:

> Authorize upon appeal in specific cases a variance from the terms of the ordinance that is not contrary to the public interest, *if, owing to special conditions*, a literal enforcement of the provisions of *the ordinance will result in unnecessary hardship* and so that the spirit of the ordinance is observed and substantial justice done . . . .

(Emphasis added.)  For the Board to grant the variance, Dorale was thus required to show that "'special conditions' exist under which 'a literal enforcement' of the

ordinance would cause 'unnecessary hardship,' which would not impair the spirit of the ordinance and substantial justice." *Hines*, 2004 S.D. 13, ¶ 12, 675 N.W.2d at 234.

[¶19.]     The DeCramers maintain that Dorale established neither special conditions nor an unnecessary hardship. In regard to the "special conditions" requirement, they argue the "Board's approval of an after-the-fact variance was forbidden by law under the circumstances because the Board found there were no special conditions warranting the variance[.]" Dorale, on the other hand, contends the Board found that special conditions existed. To support this contention, he claims that "Dorale was unaware of the 9' setback" and because of the lack of a county zoning compliance officer, no one warned him about this setback requirement.

[¶20.]     Dorale's claim is not supported by the existing record. Aside from the fact that he agreed in his building permit "to comply with all provisions of the McCook County zoning regulations, county ordinances and also with [his] building plans and site plan[,]" the Board did not find that Dorale was unaware of the nine-foot setback. Instead, it found that the "information presented was unclear as to [Dorale's] action." Moreover, Dorale's conclusory claim that the Board found the existence of special conditions is also contrary to the Board's actual finding as to the similar requirement in subsection 16.03 (G)(2)(a) of the Ordinance. As to the County's requirement that "[e]xtraordinary conditions or circumstances exist which are peculiar to the use or structure involved and are not applicable to other uses or

structures in the same district," the Board found, "nothing extraordinary in this residential district."

[¶21.]     Although the language in subsection 16.03 (G)(2)(a) referring to "extraordinary conditions" is not identical to the "special conditions" language in SDCL 11-2-53(2), Dorale has not argued that there is a significant difference between the two phrases. Notably, SDCL 11-2-53(2) refers to the "spirit of the ordinance" being observed, and even if the language in the statute and Ordinance is not synonymous, the Board did not find that any special conditions existed. Absent such a finding, the Board violated SDCL 11-2-53(2) when granting the variance. In addition, the Board's finding that there was "nothing extraordinary in this residential district" precluded it from granting the variance under the terms of the Ordinance.

[¶22.]     Because the Board acted illegally and in excess of its authority by granting a variance that did not comply with either SDCL 11-2-53(2) or the Ordinance, the circuit court should have reversed the decision of the Board and vacated the grant of the variance. Given our resolution of this first issue, we need not address the DeCramers' further claims regarding the Board's findings on whether there was an unnecessary or undue hardship and whether any special conditions or circumstances were the result of Dorale's actions. We reverse the circuit court's decision and remand for the entry of an order vacating the variance granted by the Board.

[¶23.]     Reversed and remanded.

#30652

[¶24.]     JENSEN, Chief Justice, and KERN, SALTER, and MYREN, Justices,

concur.